SEALED BY ORDER
OF THE COURT

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

### OFFENSE CHARGED

18 U.S.C. § 844(i) - Maliciously damaging or destroying, or attempting to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: 5 years mandatory minimum, 20 years maximum imprisonment
3 years supervised release
$250,000 fine
$100 special assessment

#### DEFENDANT - U.S

DUSTIN BELLINGER

DISTRICT COURT NUMBER

4-18-71663 MAG - UNDER SEAL

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Bureau of Alcohol, Tobacco, Firearms and Explosives

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    Alex G. Tse

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Elise LaPunzina

#### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show district)

FILED

NOV 21 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
} ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No
If "Yes" give date filed

DATE OF ARREST    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY    Month/Day/Year

☒ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

Document No.

District Court

SEALED BY ORDER
OF THE COURT



Redacted



ORIGINAL FILED

AO 91 (Rev. 11/11)  Criminal Complaint

NOV 21 2018

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| DUSTIN BELLINGER | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

4 - 18 - 7 1 6 6 3

**MAG**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ October 23, 2018 _____ in the county of _____ Alameda _____ in the
_____ Northern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(i) | Maliciously damaging or destroying, or attempting to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce |

This criminal complaint is based on these facts:

Please see attached affidavit.

☐ Continued on the attached sheet.

Approved as to form  *Elise Lapunzina*
AUSA Elise Lapunzina

*Complainant's signature*

ATF Special Agent Cynthia M. Chang
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/20/18

*Judge's signature*

City and state: _____ Oakland, CA _____

Honorable Donna M. Ryu
*Printed name and title*

Document No.

District Court
Criminal Case Processing

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT and SEARCH WARRANTS

I, Cynthia M. Chang, Special Agent/Certified Fire Investigator with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, being duly sworn, hereby depose and say:

### INTRODUCTION AND AGENT BACKGROUND

1.      This Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant charging Dustin BELLINGER with a violation of Title 18, United States Code, Section 844(i), which reads as follows: "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both." This affidavit is also submitted in support of a DNA search warrant for Dustin Bellinger, and searches of his residence and vehicle described in greater detail below.

2.      This Affidavit is intended to show merely that there is probable cause for the requested complaint and warrants and does not set forth all of my knowledge about this matter. In addition, where this Affidavit reports statements and information learned from others, or from reports and other documents, such statements and information are set forth in sum and substance and in relevant part.

### TRAINING, EXPERIENCE, AND BASIS FOR INFORMATION

3.      I am a Special Agent (SA)/Certified Fire Investigator (CFI) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have so been employed since June 2001. I am presently assigned to the ATF San Jose Field Office in San Jose, California.  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) that is, an

officer of the United States who is empowered by law to conduct investigations of and to make

arrests for offenses enumerated in 18 U.S.C. § 2516. I was trained as an ATF Special Agent at

the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. My training

included subjects such as fire and arson investigations, explosives investigations, firearms

trafficking, narcotics trafficking, and investigative techniques and evidence derived therefrom,

and the execution of search and arrest warrants. Additionally, as an ATF Certified Fire

Investigator (CFI), I completed a rigorous two-year program involving fire origin and cause

determination, fire dynamics, thermodynamics, fluid dynamics, chemistry, and material sciences.

As such I have authored over 100 fire "Origin & Cause" determination reports, and have

investigated over 200 fire scenes.

## STATEMENT OF PROBABLE CAUSE

4. On Tuesday, October 23, 2018, I examined a structural fire scene at 3205 Hollis

Street, unit #101 in Oakland, California, known as "Hollis Oak" Apartments (under

construction). Approximate time of the fire based on discovery by a security guard was 3:00am.

5. Hollis Oak is a mixed use project located on 2.2 acres, approximately 166,000

square feet in size, consisting of 124 residential rental units, and one retail space. The weekend

of September 28, 2018, the developers started holding weekend open houses of the property

through "Madison Park Financial," a real estate and property management company. The open

houses were advertised online and public realtor signs outside the building. Though one portion

of the overall project was incomplete/still at the 65% completion phase, the slated opening date

was December 1, 2018.

6. The fire caused minimal damage to the ground floor level of unit #101 and did not

affect any other units. Unit #101 is a two-story unit in the historic/original portion of the project,

2

with the unit being situated at the corner of Hollis St. and Peralta St.  Damage to unit #101 consisted of minimal fire/smoke damage to the 1st floor bathroom and minimal smoke damage to the immediate surrounding area.  There were no injuries reported.

7.      At approximately 3:00am, a security guard on routine foot patrol noticed smoke coming from the center window of three first floor windows of unit #101 that faced Hollis St. The window had been broken and smoke was emanating outward.  All other windows and doors were secured.  He had last made his rounds in that location approximately 12-15 minutes prior and the window was secure and unbroken.  After discovery of the break-in/compromise of the window and fire, security guards entered the unit and opened the second floor windows to let the smoke out before calling 911 at approximately 3:18am.  The security guard who discovered the fire advised he had not seen the person(s) responsible for the break-in and fire.

8.      Oakland Fire Department (OFD) response was minimal and no water was required, as the fire self-extinguished due to a lack of fuel and oxygen.  The fire occurred in a corner of the 1st floor bathroom wherein an unknown person(s) introduced gasoline and a competent ignition source such as that of an open flame from a lighter or match.  The gasoline vapors would have been the first fuel ignited.  In the corner of the bathroom where the fire was concentrated, no physical contents were present except the fuel of the paper face of the dry wall, the baseboards, and the flooring.

9.      Oakland Police Department (OPD) responded to the scene due to the apparent break-in to the site, and because a hammer had been located on the window sill, along with an intact unburned red plastic gasoline container located just outside the ground floor bathroom. The gasoline container had a white rag hanging out of the fill/spout area.  OPD collected the hammer, along with a cigarette lighter discovered inside on the ground floor of the unit near the

3

rear door, to process for latent fingerprints and DNA analysis. The gasoline container and rag were left in place and examined once ATF agents and an ATF CFI arrived.

10.     That same day, additional items were obtained as evidence, per a written consent to search the premises by the owner's representative and the construction company vice president. These items included the 2-gallon plastic gasoline container, the rag stuffed inside the fill/spout area, liquid from inside the container, fire debris from the bathroom, a dust mask, shards of broken glass, swab of a reddish-brown smudge inside the broken window sill, along with a cigarette butt found outside the window, and a black latex glove found near the trash container outside the front door of unit #101. The following are pictures of the broken window and reddish-brown smudge.







11.     ATF CFIs determined the origin of the fire to be within the ground-floor

bathroom of the two-story unit #101. The fire was ruled incendiary after all accidental and

natural causes were eliminated.

12.     No identifiable prints were located on any of the seized items submitted for latent

print analysis.

6

13.     The fire debris from the bathroom of origin, along with the liquid removed from the gasoline container, and the rag inserted into the gasoline container tested positive for the presence of gasoline, an ignitable liquid.

14.     Additionally, results of items submitted for DNA analysis were as follows:

      i. Reddish-brown smudge from window sill:  not presumptive positive for blood, but determined to be a human biologic substance; single source male DNA profile identified.

      ii. Cigarette butt:  single source DNA profile identified (different from profile identified on reddish-brown smudge).

      iii. Rag stuffed into gasoline container:  a three-person DNA profile mixture was obtained; of those three-person mixtures, the biologist determined one of the three profiles was consistent with the single source male DNA profile obtained from the reddish-brown smudge from the window sill.

      iv. Handle of hammer:  Security guard's DNA profile present, but after being excluded by a DNA swab/sample provided by him for elimination purposes (since he admitted to touching the hammer after discovering the break-in), another male DNA profile was obtained, different from the reddish-brown smudge and different from the cigarette butt.

      v. Lighter:  mixture of three DNA profiles, but not useable (i.e. too low levels present for further analysis).

      vi. Gas container:  mixture of four DNA profiles; too low levels for further analysis.

      vii. Black latex glove:  single source DNA profile obtained.

15.     Of the items enumerated above, the profiles from the following items of evidence were suitable for upload into CODIS:  reddish-brown smudge from inside the window sill, hammer, cigarette butt, and black latex glove.  CODIS is the acronym for the Combined DNA Index System and is the generic term used to describe the FBI's program of support for criminal justice DNA databases as well as the software used to run these databases.  Depending on the jurisdiction and other parameters, arrestees and offenders have their DNA uploaded into this database, so it is on file in case they re-offend and/or are associated to other crimes.  Per ATF biologist, ATF submits the most complete DNA profile for upload into CODIS.  Since the reddish-brown smudge was a single-source DNA profile, it was uploaded into CODIS.  The rag had a three-person mixture DNA profile, so it was not uploaded into CODIS for comparison.  However, the DNA profile from the reddish-brown smudge is consistent with being a contributor to the three-person mixture DNA profile on the rag.  ATF biologist will make direct comparisons on all items containing DNA profiles suitable for comparison once a known DNA sample is obtained.  The statistical weight of a DNA match will be calculated by the ATF laboratory once DNA samples are received and compared with the evidence.

16.     On November 2, 2018, I was contacted by the ATF CODIS representative who advised of the results of a CODIS "hit" to the reddish brown smudge recovered from the window sill at 3250 Hollis St., Unit #101.  The cigarette butt did not match any DNA profiles within CODIS.

17.     The electronic "hit" was returned from an entry previously entered by the State of California, and was confirmed by the Department of Justice-State of California.  The "hit" was to an individual in the CODIS database identified as "Dustin BELLINGER" (DOB: ▮▮▮▮▮▮

8

18.     Construction site management were not familiar with anyone ever employed with the name "Dustin."

19.     BELLINGER has an arrest and State conviction history for kidnapping (11 year prison sentence) and second degree robbery (9 year prison sentence). According to his criminal history, he does not appear to be in law enforcement custody at this time. His recent addresses, available from searches of DMV records, and publically available records, indicate a current address in Oakland, CA.

20.     It should be noted that on November 6, 2018, another electronic CODIS "hit" was returned on the DNA profile uploaded from the hammer. The "hit" was to an entry previously entered by the State of California, and was confirmed by the Department of Justice-State of California, as belonging to █████████. The association, if any, between █████ and BELLINGER is unknown at this time. Additionally, it is unknown if █████ was present when investigators believe the hammer was utilized to break the window, or if █████ had only been in possession of it sometime in the past, during which his DNA was deposited upon the hammer. Construction site management could not confirm if █████ was ever employed at the site, due to the commonality of the man's first name. Further inquiry is being sought.

21.     Investigators determined that no other tools were present within unit #101, nor should a hammer have been present within that unit. Additionally, supervisory construction personnel advised that the hammer discovered was not a "framer's" hammer that would have coincided with the last portion of framing work being done elsewhere in the complex. Instead, they advised the hammer resembled that of a "weekend/do-it-yourself" type hammer, not one a professional/construction site employee would possess.

9

22.    DNA results from the black latex glove results are still pending.

23.    Investigators determined two addresses associated with BELLINGER, including ███████████ Oakland, CA, as listed on his current California DMV license, and address where his vehicle (2002 white Ford F-250 van with roof racks, CA-██████ ) is registered.  It is also the address he used when filing an insurance claim in January 2018 for a vehicle accident. Through a search of publically available database ("Accurint"/Lexis-Nexis), the house is owned by a woman believed to be his aunt.  "Accurint" also shows a utility service connection date of 3/11/18 in BELLINGER's name at ██████████ and last verified on 3/13/18 (for "Miscellaneous: Other").

24.    However, based on ATF surveillance camera footage from cameras installed (per consent) on November 6, 2018, at a warehouse across from ███████████Oakland, CA, investigators observed BELLINGER coming and going from the residence of ███████████ (several houses down from ██████████ Through a search of publically available database ("Accurint"/Lexis-Nexis), the house is owned by an individual whose association with BELLINGER is unknown.  "Accurint" also shows a utility service connection date of 5/16/17, and last verified on 5/22/17, in BELLINGER's name, at ████████ for "Convenience: Paging, Long distance phone, Local phone, PCS, Cellular phone, Line leasing, Internet, Satellite, Cable TV Service, Cable Equipment, Bundled").

25.    Based on review of camera footage of ███████████Oakland, CA, as well as physical surveillance of BELLINGER coming/going from that address from November 6, 2018 through the morning of November 19, 2018, it is believed to be his residence and where he sleeps most nights.  A review of camera footage for the past three days shows BELLINGER entering the residence at night and re-emerging in the morning.  He has been seen using what

appears to be a key to unlock the black security gate surrounding the property, and then access a ground floor door to the left of the stairs that ascend upward to the main front door (which has been seen to be left open at various times).

26.     Additionally, BELLINGER has been observed driving a 2002 white Ford F-250 van with roof racks, bearing California license plate "██████ On most occasions when reviewing the camera footage or based upon physical surveillance, the van is observed to be parked in front of ██████████Oakland, CA, or just near it if spots are unavailable in front. Furthermore, nobody other than BELLINGER has been seen driving the van, and BELLINGER has not been seen to drive any other vehicle or ride-share.

27.     On one occasion, investigators observed BELLINGER park his van out front of ██████████Oakland, CA, after which he opened the rear doors and appeared to clean out items from the back of the van, taking them to a trash container secured behind the black metal security fence around the residence.

28.     Investigators believe BELLINGER to be self-employed because no records have been obtained that indicate an employer. That said, his Instagram and Facebook accounts have been located, but under the name "Faheem Bey." An association to the name "Bey" was also discovered when Your Affiant obtained a letter dated June 25, 2006, written by Dustin BELLINGER, to "Judge D. Clay," for a prior case. In the letter, BELLINGER makes references to a "my brotha Antar Bey (Dr. Yusif Bey's son)," along with a statement that his second wife was "Jahannah Bey."

29.     Investigators identified "Faheem Bey" and BELLINGER to be the same person based upon an original search and identification of his seemingly inactive (last posting July 2012) Facebook account under "Dustin Bellinger," wherein his profile picture depicts him with

11

long dreadlocks. Through a search and review of Facebook for relatives with the name "Bellinger," and going through their "friends list," the name "Faheem Bey" was identified. Upon review of the "Faheem Bey" profile, pictures matching the likeness of BELLINGER (with long dreadlocks) was discovered, after which later uploaded photos and comments showed BELLINGER (aka-"Faheem Bey") to have cut his dreadlocks and shaved his head. Additionally, comments from a "Bellinger" family member referred to him as "Dusty." Furthermore, this led to the identification of an Instagram account under the name "Faheem Bey," who resembles the Facebook profile of "Faheem Bey" (aka-Dustin BELLINGER).

30.    It should be noted that BELLINGER's "Faheem Bey" Facebook account indicates he is self-employed, and his Facebook profile picture depicts BELLINGER with what your affiant recognizes to be a respirator hanging around his neck, often utilized during construction-related activities to protect the person from breathing in fumes and/or dust particles. Additionally, his Instagram account has numerous photographs of BELLINGER conducting construction type activities, to include photographs of him involved in demolition of a bathroom, demolition of interior walls, working on exterior siding and roofing, kitchen remodels, flooring work, and exterior space/landscaping. Also, BELLINGER posted a comment on his Instagram account (under "Faheem Bey") wherein he refers to finishing exterior siding, and in another comment, thanks his demolition team.

31.    It is believed that evidence enumerated in Attachment B will be found in the residence and vehicle described in Attachment A, because BELLINGER, with or without co-conspirator(s), appears to have illegally accessed unit #101 at 3250 Hollis St., Oakland, CA on October 23, 2018, and started a fire inside the ground floor of that unit. Based on my training and experience, I know persons who commit the crime of arson use various modes of

transportation to/from the scene of their crime, including vehicles. Therefore, items used in the pre-planning, commission, and post-commission of the crime can still be inside their vehicle. This is the same for their place of residence, where items used in the pre-planning, commission, and post-commission of their crime can still be located. Additionally, persons who commit the crime of arson often use electronic storage devices to capture information, including photographs, videos, and notes, related to their target. They often take photographs and capture other documentation of their crimes to review later. Due to the nature of the fire scene at unit #101, it is believed that physical evidence, including shards of glass from the broken window, biological evidence including blood, rags, latex gloves, and remnants of gasoline could still be present on items worn and used during the commission of the arson. Lastly, for the reasons stated above, I believe that probable cause exists to believe the collection of a genetic material sample ("DNA") from Dustin Bellinger when compared with the DNA profile obtained from the aforementioned evidence (reddish brown smudge from window sill, and one of three profiles from the rag stuffed into the gasoline container), and to the CODIS "hit" to "Dustin Bellinger" will yield evidence that shows the DNA belongs to one and the same individual.

## CONCLUSION

32.     Based on the aforementioned facts and my training and experience, specifically that BELLINGER's DNA profile was on the reddish-brown smudge on the sill of the broken window, and consistent with one of the DNA profiles on the rag stuffed in the gasoline container fill/spout area, there is probable cause to believe that the defendant, Dustin BELLINGER, committed or attempted to damage or destroy by means of fire, real property used in interstate or foreign commerce, or in any activity affecting interstate or foreign commerce, in violation of Title 18, United States Code, Section 844(i). I respectfully request that the Court issue the

13

requested arrest warrant. Based on the aforementioned facts and my training and experience, I respectfully request that search warrants be issued for Dustin BELLINGER's DNA, and for searches of his residence and vehicle.

33.     I declare under penalty of perjury that the facts contained herein are true and correct to the best of my information and belief.

Respectfully submitted,

Cynthia Chang
Special Agent/Certified Fire Investigator
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on November 20, 2018.

THE HONORABLE DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE